ORIGINAL

ECF

FILED
AUG 2 2 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

************************************
**BMAR & ASSOCIATES, INC.**
**Plaintiff**

v. No. 03-1983C

**THE UNITED STATES,**
**Defendant**
************************************

## COMPLAINT

BMAR & ASSOCIATES, INC., Plaintiff herein, files this Complaint against the United States of America, and respectfully shows the Court the following:

**I.**

## PARTIES

1. Plaintiff, BMAR & ASSOCIATES, INC., (herein "BMAR") is a Kentucky company having its principal place of business in Hopkinsville, Kentucky. BMAR is the prime contractor under Contract No. N68711-99-D-3322 for Base Operating Services at Naval Air Weapons Station, China Lake, California (herein the "CONTRACT").

2. Defendant is the United States of America acting through the Department of the Navy, Naval Air Weapons Station, located at China Lake, California (herein the "GOVERNMENT" and/or "NAVY"). The United States of America is the other party to Contract No. N68711-99-D-3322.

## II.

## JURISDICTION

3. On October 24, 2001, BMAR submitted to the NAVY a letter setting forth BMAR's interpretation of certain contractual provisions regarding the issuance of Delivery Order No. 0162 by the NAVY under the CONTRACT. In this letter, BMAR challenged the authority of the NAVY to issue this delivery order and instead claimed that the work requested by the NAVY should have been issued as a modification/task order to the CONTRACT.

4. By letter dated August 22, 2002, the NAVY's Contracting Officer (CO), Joseph S. Saunders, provided BMAR his interpretation that the CONTRACT permitted the NAVY to issue Delivery Order No. 0162 and that the NAVY was not required to order the work as a modification/task order to the CONTRACT. A true and correct copy of this letter is attached hereto as Attachment "A" and is incorporated by reference as though set forth verbatim. Contracting Officer Saunders ended his interpretation of the CONTRACT with the following:

> You are reminded of your rights and responsibilities under FAR 52.233 – Disputes Alternate I (DEC 1991). If you disagree with this interpretation, you may make a claim against the Government in accordance with the procedures of the subject clause.
>
> Attachment "A", CO letter dated August 22, 2002, pg.2

5. On January 22, 2003, and in accordance with Federal Acquisition Regulation (FAR) 52.233-1, BMAR submitted a written claim requesting appeal of the CO's August 22, 2002 interpretation of the CONTRACT. A true and correct copy of this

letter (without exhibits) is attached hereto as Attachment "B" and is incorporated by reference as though set forth verbatim.

6. More than sixty (60) days have passed since BMAR submitted its written claim and the NAVY has yet to issue a final contracting officer's decision. Consequently, pursuant to 41 U.S.C. § 605(c)(5) BMAR's January 22, 2003 claim for contract interpretation is deemed denied and BMAR is now authorized to commence this suit on its claim under the Contract Disputes Act (CDA).

7 Less than twelve (12) months has passed since BMAR's January 22, 2003, claim was deemed denied pursuant to 41 U.S.C. § 605(c)(5).

8. Therefore, this Court has jurisdiction pursuant to 41 U.S.C. § 609(a)(1) & (3) of the Contract Disputes Act and 28 U.S.C. § 1491(a)(2). *See Clearwater Constructors, Inc. v. United States*, 56 Fed. Cl. 303, 307 (2003) (holding that Tucker Act provides jurisdiction to this Court for "other non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of the [CDA]").

## III.

## STATEMENT OF FACTS

### A. The Solicitation and the Contract.

9. On March 17, 1998, the NAVY issued Solicitation No. N62474-96-R-6320 for Base Operating Services at Naval Air Weapons Station located at China Lake, California (herein the "SOLICITATION"). The SOLICITATION contemplated both a firm-fixed price and a cost reimbursement contract. The SOLICITATION also divided the proposed work by category or "Annex."

10. Annex 1 to the SOLICITATION, and eventually the CONTRACT, entitled "Grounds Maintenance", required BMAR to provide the following work:

> **C.1 GENERAL REQUIREMENTS:** The Contractor shall provide all necessary vehicles, permits, licenses, equipment, labor, scheduling, estimating, supervision, transportation and be responsible for a grounds maintenance program. The contractor shall manage and perform grounds maintenance utilizing qualified, formally trained, and knowledgeable employees to keep the grounds in an orderly, clean, safe, and healthy condition. As so ordered by the Contracting Officer, the contractor will provide landscape services at various locations within NAWC/NAWS.

11. The work performed under Annex 1 was to be ordered by the NAVY thru delivery orders and invoiced utilizing indefinite quantity (IQ) CLINs. Specifically, the SOLICITATION and the CONTRACT provided the following:

> **C.1.1 INDEFINITE QUANTITY**
> Indefinite quantity work shall be performed only when ordered by the Government on Work Orders/Delivery Orders issued in accordance with the clause in SECTION I entitled ORDERING and in accordance with the Schedule of Prices, Section B. Indefinite quantity work shall be accomplished within the time specified on the Work Order/Delivery Order (W.O./D.O.) in accordance with the performance standards specified in Appendix s 1-3 through 1-11.

12. Annex 4 to the CONTRACT, entitled "Housing Maintenance", required BMAR to provide the following work:

> **C.1 GENERAL REQUIREMENTS.**
>
> The work to be accomplished within the scope and intent of this annex includes the maintenance and repair of all designated family housing, transient housing units and other real property, household appliances and furniture associated with these units, associated maintenance management including grounds during change of occupancy, and the operation of the Self-Help store.

13. On or about January 28, 2000, the NAVY issued Amendment 10 to the SOLICITATION which modified several requirements to the proposed CONTRACT. Specifically, this amendment replaced certain NAVFAC drawings with revised drawings. To this end, Amendment 10 to the SOLICITATION provided the following:

Annex 1 – Grounds Maintenance:

Replace NAVFAC Drawings . . ., 663638. . . with ***revised NAVFAC Drawings 663638 which reflects various changes, locations, and clarifications to the areas requiring service.***

Emphasis Added.

14. A revised NAVFAC Drawing 663638 was attached to Amendment 10 to the SOLICITATION. This revised drawing shows that the area related to Annex 4 (Housing Maintenance) was not part of the area requiring service under Annex 1. In particular, the revised drawing shows that grounds maintenance in Annex 4 was to be performed by a NISH contractor presumably under a separate contract.

15. The work area deleted from the SOLICITATION, and eventually the CONTRACT, is clearly marked on revised NAVFAC Drawing 663638 as "NISH Responsible." Consequently, the parties never agreed that BMAR would perform Annex 1 work within the area described as "NISH Responsible" on revised NAVFAC Drawing 663638. The resultant CONTRACT therefore does not obligate BMAR to perform this work. The area deleted from Annex 1 pursuant to Amendment 10 represented the Military Family Housing portion of the base.

16. On September 21, 1999, the NAVY awarded Contract No. N68711-99-C-3322 to BMAR & Associates, Inc. for Base Operating Services at Naval Air Weapons

Station, China Lake, California. The CONTRACT incorporated the SOLICITATION and Amendment 10.

17. On July 18, 2000, the CONTRACT number was changed to Contract Number N68711-99-D-3322 as a result of Modification P00002 which incorporated FAR Clause 52.232.33 entitled "Payment by Electronic Funds Transfer."

**B. The Claim and the Dispute.**

18. On September 29, 2000, the NAVY issued Modification P00009 in the amount of $24,586.25. This modification to the CONTRACT directed BMAR to perform one-time grounds maintenance work (tree trimming, tree removal, and high voltage tree trimming) to certain military family houses listed in Annex 4 and within the area identified as "NISH Responsible" on revised NAVFAC Drawing 663638. In other words, the NAVY did not issue a delivery order to BMAR under the indefinite quantities (IQ) portion of Annex 1 for this work, but instead issued a modification to Annex 1.

19. Approximately one year later, on September 25, 2001, the NAVY issued Delivery Order (DO) 0162 to BMAR requesting BMAR to perform certain grounds maintenance (tree trimming, tree removal, and other tree work) in Military Family Housing area to be invoiced under the IQ portion of Annex 1. This work was similar to the work performed previously by BMAR under Modification P00009.

20. On October 24, 2001 and in response to the issuance of DO 0162, BMAR wrote correspondence to LCDR Hector Arellano stating BMAR's position that "any grounds maintenance work requested to be performed in Annex 4 should be issued under a modification/task order to the contract." In referencing Modification P00009, BMAR

further stated that in the past the parties had treated the same work as a modification to Annex 1 of the CONTRACT and not as a part of the IQ portion of Annex 1.

21. In responding to BMAR's October 24, 2001 letter, LCDR Arellano stated, "No problem. We agree with your position." *See* Attachment "C", electronic correspondence dated October 25, 2001 from Hector A. Arellano (EFDSW) to David Gee of BMAR.

22. DO 0162 was subsequently cancelled by the NAVY in its entirety on December 6, 2001. The requirement under DO 0162 was never ordered under a task order or a modification to the CONTRACT.

23. By letter dated August 22, 2002, the NAVY's Contracting Officer (CO), Joseph S. Saunders, provided to BMAR his interpretation that the CONTRACT permitted the NAVY to issue delivery orders requiring BMAR to perform tree trimming, tree removal and other tree work in the Military Family Housing (Annex 4); however the NAVY asserted that this work was to be invoiced under the IQ portion of Annex 1.

24. In addition, CO Saunders issued work order numbers 0102006, 0102004, and 0102009 to BMAR for tree trimming work in Annex 4 to be invoiced under the IQ portion of Annex 1. *See* Attachment "A". BMAR performed the work under protest and was paid the IQ CLIN rate. The Annex 1 work requested under these work order numbers was clearly within the area identified by revised NAVFAC Drawing 663638 as "NISH Responsible."

25. On January 22, 2003, and in accordance with Federal Acquisition Regulation (FAR) 52.233-1, BMAR submitted a written claim requesting appeal of the CO's August 22, 2002 contract interpretation. *See* Attachment "B".

26. More than sixty (60) days have passed since BMAR has submitted its written claim and the NAVY has yet to issue a final contracting officer's decision. Consequently, pursuant to 41 U.S.C. § 605(c)(5), BMAR's January 22, 2003 claim for contract interpretation is deemed denied.

27. All conditions precedent to the filing of this lawsuit have been met by the parties and this dispute is properly before this Court.

## III.

## COUNT ONE: THE DEFENDANT'S INTERPRETATION OF THE CONTRACT IS INCORRECT

28. BMAR disputes the contract interpretation issued by CO Saunders in his decision dated August 22, 2002. *See* Attachment "A". Specifically, all grounds maintenance work to be performed by BMAR in the Military Family Housing area under Annex 1 was deleted as a result of Amendment 10 to the SOLICITATION and revised NAVFAC Drawing 663638 which was later incorporated into the CONTRACT.

29. BMAR's interpretation of the CONTRACT is further supported by the acts of the NAVY subsequent to the award to BMAR. In particular, by issuing Modification P00009, the NAVY confirmed BMAR's contract interpretation that grounds maintenance work in Annex 4, such as tree trimming, tree removal and high voltage tree trimming, is

outside the scope the CONTRACT terms and that BMAR is entitled to a contract modification if ordered to perform that work in the areas covered by Annex 4.

30. Furthermore, when presented with BMAR's contention that grounds maintenance in Annex 4 was deleted by Amendment 10 to the SOLICITATION, and therefore this type of work was not part of the CONTRACT, LCDR Arellano stated, "No problem. We agree with your position."

31. Consequently, BMAR requests that this Court confirm BMAR's contract interpretation for all relevant contract provisions related to this dispute and declare the rights and obligations of the parties under the CONTRACT. Specifically, BMAR requests the following contract interpretations, findings and declarations from the Court:

a. That Amendment 10 to the SOLICITATION deleted grounds maintenance under Annex 1 from all areas related to housing maintenance and Annex 4.

b. That the revised NAVFAC Drawing 663638, which was incorporated into the CONTRACT, deleted all Annex 1 requirements from all housing maintenance areas.

c. That Modification P00009 issued by the NAVY modified the requirements under Annex 1 and required BMAR to perform certain one-time grounds maintenance work in the housing area and that this work was not invoiced to the Navy under the IQ portion of Annex 1.

d. That work order numbers 0102006, 0102004, and 0102009 should have been issued to BMAR as a contract modification to Annex 1 and not as a delivery order under the IQ portion of Annex 1.

e. That BMAR is entitled to an equitable adjustment under the CONTRACT for work order numbers 0102006, 0102004, and 0102009.

f. That any future grounds maintenance work contemplated under Annex 1, requested by the NAVY under this CONTRACT to be performed in those areas described as "NISH Responsible" on revised NAVFAC Drawing 663638, shall be negotiated between the parties and issued under a modification/task order to the CONTRACT.

## IV.

## REQUEST FOR ALTERNATIVE DISPUTE RESOLUITION

32. Pursuant to Appendix H, paragraph 3 of the RCFC 41 U.S.C. § 605(d), and FAR § 52.233-1(g), which was incorporated into the CONTRACT by reference, BMAR hereby notifies the Court of its desire to pursue resolution of this dispute through an agreed upon ADR procedure.

## V.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, BMAR & Associates, Inc. prays for the following relief:

1. That this Court resolve the contract interpretation dispute between the parties as more formally set forth herein by entering a judgment in favor of BMAR which is consistent with the contract interpretations, findings and declarations requested in paragraph 31 of this Complaint;

2. That this Court enjoin Defendant from issuing to BMAR any future grounds maintenance work as provided in Annex 1 under this CONTRACT to those areas identified in revised NAVFAC Drawing 663638 as "NISH Responsible" unless that work is issued under a modification/task order to the CONTRACT; and

3. BMAR & Associates, Inc. further requests any general relief that it may prove to this Court that it is entitled.

Dated: August 21, 2003

Respectfully submitted:

By: [signature]

Joan K. Fiorino, Esq.
State Bar No. 07038500

LAW OFFICES OF DULSKE AND FIORINO, P.C.
The Spectrum Building
613 NW Loop 410, Suite 550
San Antonio, TX 78216
(210) 524-3821 (Telephone)
(210) 340-1648 (Facsimile)
jfiorino@dulske-fiorino.com

Of Counsel:

John C. Dulske, Esq.
LAW OFFICES OF DULSKE AND FIORINO, P.C.
The Spectrum Building
613 NW Loop 410, Suite 550
San Antonio, TX 78216
(210) 524-3821 (Telephone)
(210) 340-1648 (Facsimile)
jdulske@dulske-fiorino.com